Our next case for this morning is United States v. Atwood, Mr. Peejan. Good morning. May it please the court, counsel to the government. My name is Raymond Peejan. I represent the defendant in this case. His name is Deandre Atwood. The sole issue before you revolves around the application of a sentencing guideline, 2C.1.2, which in particular refers to reckless endangerment during flight. So in order to apply this sentencing guideline, which amounts to two points, would require the government to show that there was reckless conduct, that it occurred during the course of flight, that it created a substantial risk of death or serious bodily injury to another person. So really, Mr. Peejan, the district judge seems to have had this view, that the notion of darting across eight lanes of the Dan Ryan Expressway, even in the middle of the night, my personal experience is that there's never a time that there aren't cars driving on that could rationally conclude without committing clear error that this is precisely the kind of reckless behavior. Maybe not everything that was mentioned, but that is so bad and it's one of the things that was presented. How can this enhancement be wrong? Well, it was indeed one of the factors, but the judge did not say that that was the factor, the ultimate factor or the only factor that it made its decision on. But is there anything, I'll find it in a minute, but she does single that out. I'm looking at page 15 of the sentencing transcript. She says, so running across the expressway, someone sees him, hits the brakes, the car behind him hits it. And then of course, it says during flight should be construed broadly. And she's clearly paying attention to the very risky behavior that racing across the Dan Ryan involves. Yes, she certainly did point that out. But this is the basis for her decision was really a trilogy. And by that, I mean, there were three factors that she repeated, that the government argued, and that were presented throughout the sentencing. And that is number one, whether or not the act of driving at five miles an hour on the expressway and coming off- With a broken axle and a stolen car, yes. And with a stolen car and he had drugs in his system, whether that is a, well, the point there is whether or not that is during the course of flight. Because if it is not, then it doesn't apply under these circumstances. So my position is clearly that there was no flight at that time. As a matter of fact, when he was driving on the expressway at that low rate of speed, didn't even, there's no evidence that he even knew that he was being followed by the state trooper. He probably didn't. Judge Rovner? So then- Wait, wait a second, Judge Rovner has a question. Sorry. You know, the district court adopted the PSR and the PSR seems to say that Atwood did not immediately pull over when the officers activated their lights. Why isn't that enough to count directly as driving against him? I mean, during the period of time that he delayed pulling over, wouldn't that be part of his flight? I don't think so, Your Honor, because, well, number one, he did stop. He stopped coming up the Roosevelt ramp and he got out of his car. So he stopped completely. And there was no danger to anyone that's exemplified in the record in this case that anyone was in danger of death or great bodily harm when he was pulling over onto the ramp. So the other factors that are required under this section are not met under those circumstances. So what I'm saying essentially is that if we look at this as a three-legged stool, one of the legs that the judge relied on just doesn't apply under the circumstances of this case. Then we go to the second one. When he got out of the vehicle, he had a gun, and from all indications in the record, what he did was he immediately threw the gun away. He threw it over a fence. This fence separates the ramp from the expressway, as at least there's a decline at that point that connects with the lower part of the expressway. So he took the gun. He didn't point it at the police officer. There's no evidence of that. It was loaded, right? Pardon? It was loaded, the gun? We don't know for sure. We know that there was like a drum, they call it. It had a lot of bullets in it. Right, this round thing? Yeah, a round thing, right. But here's what we don't know. So we don't know that it was in the gun at the time. We do know that when it was found over the fence, that it was in two parts. In other words, there was the gun, and then there was the magazine. But we don't know. There's no evidence in this record. And the judge did not discuss whether or not the gun was loaded, or the gun wasn't loaded, or anything along that line. But the judge relied on one other factor, which is not supported by this record either. And that is, she said, well, he threw the gun in an area, in a residential area. So there was some elaboration on that. And actually, everyone was perhaps thinking on their feet to some extent, as was I, because I know the area. But there's no evidence that this was a residential area. So let me ask you this. I mean, you're focusing on the fact that she offers a couple of different thoughts as she's discussing this. If she means them to be independent grounds for the enhancement, then you've got to get rid of all of them. And it's impossible for you to get rid of the running across the Dan Ryan one. If she means them somehow to count only if they're all found, that's a different situation, which seems to be the approach you're taking. But I don't see that in her discussion. She just kind of is talking about each one because they're there. But it seems that, at a minimum, the running across the freeway one, she thinks is very reckless. Your Honor, with all due respect, I think that all of the decisions that she made, there were a few of them along the way where she analyzed this, they all amalgamated all three conditions. In other words, she didn't separate it and say, well, based on this, this alone, actually, to some extent, she indicated that just driving slow on the expressway would be a risk that would fall under this category. But that, as already discussed, is not applicable to this situation. Well, it's risky. It just might not be fleeing. There's no question about the fleeing. Yeah, and that's a requirement. But the way that she ruled, it appears that, and this is my recollection as well, that she was taking all of these circumstances, confluent of circumstances, and putting them all together and saying, driving slow on the expressway could cause danger to someone. Throwing the gun away could create a problem because it's in a residential area. And number three, going across the expressway. So if you take two of those away, if we take the gun, say, that's the information that is too thin in order to support this. Driving slow on the expressway just doesn't make it. So now the question is, what would the judge, what would the trial judge have done if that was the only factor for her to consider? Now, there are problems. And we know that there are a lot of cases. The government, and in my brief as well, we rely essentially on the same cases. And almost all of them deal with high-speed chases through residential areas. And the gun cases deal with throwing a gun in a briar patch or having it in your hand and pointing it in a way that the officer might consider that it would be a danger to him. Or dropping the gun in a residential area, like in an area where there might be a school. So that having been said, we're left with the going across the expressway. But there too, the evidence in the record is too thin to decide that. Unless you feel that as a matter of law, that running across the expressway at night, it was 2, 2.30 in the morning, is automatically, per se, it's a violation of this section as far as the enhancement is concerned. Violation of common sense. Pardon, Judge? Violation of common sense. Well, yeah, there certainly is common sense. But that's not one of the elements that we have to deal with here. If it were, I think I'd be, I wouldn't be in great shape. In any event, I'd like to reserve some of my time. All right, I'll give you a minute, but you can sit down now. Thank you, Judge. Ms. Marin? Good morning, Your Honors. May it please the court. My name is Maureen Marin, and I represent the United States. As this court has recognized, the district court correctly determined that the defendant, who exited the car after a traffic stop, tossed a gun with a drum magazine over a fence, and then raced across the eight-lane expressway to avoid arrest, had recklessly created a substantial risk of death or serious bodily injury to another person. Now, it sounds like the officer raced across the expressway right after him? At least one of the officers did. One remained at the car, and the other one, it seems from the record, apparently chased him across the expressway. So would it be reckless if this happened to be an unusual moment on the Dan Ryan, when there's just no traffic? I mean, it's just a big wide expanse at that point. There's no evidence in the record that there was no traffic, as Your Honors pointed out. There's almost no time on the Dan Ryan where there is no traffic, and in his argument before the court, there was, in the district court, the defendant conceded that there is traffic on the Dan Ryan at any time of the day or night. Whether it was a good idea of the trooper to follow the defendant doesn't necessarily mean that the trooper wasn't acting reckless, but our focus here is what's on the defendant's conduct. And here, consistent with this court's cases, including United States v. Brown, what we have here is the same risk. What the defendant is doing, this time on foot, as opposed to in a speeding car, is posing a risk to other motorists and other people nearby who might observe this and brake or swerve, and therefore be seriously injured. Now, do we have to worry? It seems that Mr. Pijan almost concedes that, but he backs off from that by saying maybe the district court wouldn't have found that the enhancement applied if the only evidence on the table was the dash across the Dan Ryan Expressway, if it weren't for the throwing of the gun and the driving five miles an hour and the broken up car and the other factors. I don't think that that's consistent with how the district court approached her decision here. If you look at page 18 of the sentencing transcript, in giving her reasons for imposing the enhancement, she cites two and the separate risks. And each of those reasons are severable. One, he's driving intoxicated and drunk and he's running from police. And she says this is reckless endangerment based on the fact that anyone could have been involved in a car accident trying to avoid hitting him in the first place in his car, that is between the time the trooper hit the lights and the time he actually stopped, and in the second place when he ran. That is, there's a separate risk that the district court identified that somebody on the Dan Ryan could have hit him as he was leapfrogging across the highway. That standing alone is more than sufficient to apply the enhancement under 3C1.2. And for those reasons, Your Honor, we'd ask you to affirm the district court's decision. I do have a question, please. Is there any indication in the record that pulling slowly, you know, pulling over slowly on a flat tire is somehow reckless? Is there something he did during pulling over that was specifically reckless? Other than the manner in which he was driving, which caused the trooper to turn on his lights and attempt to pull him over in the first place, he didn't respond to the trooper's lights. But other than just simply driving at that speed in a stolen car, no, there's nothing additionally reckless about that. The strongest case for the recklessness of his actions is, of course, what he did when he exited the car, which is make the decision to escape by crossing eight lanes of traffic because he figured that the police weren't going to be able to stop him. Thank you. Thank you, Your Honor. All right, thank you very much. Anything further? I said I would give you a minute, Mr. Pigeon. I'll take a minute, Your Honor. Quite frankly, I don't remember anything in the record in terms of what the police officer did as far as running across the expressway, but certainly hearing it right here, it raises another question in my mind in terms of what the expressway traffic was like at that time. There is no information, no evidence in the record in terms of what the traffic was like at that time. Sure, there is traffic regularly on all of the expressways, but that doesn't mean that there is a lull in the traffic enough for somebody to go across the street. This fellow was 20 years old. He jumped over a high fence. I don't think that the police officer was capable of doing that. So somebody else got into that position and then they didn't actually wind up finding him across the street for I think there's a goodly period of time, maybe 20 minutes or something like that. It was not automatic. So this is the problem as far as the scant amount of information that we have to apply this particular enhancement. This is a two-level enhancement for Mr. Atwood. That's one extra year, and on the bottom, he got the 84 months. If he did not have this enhancement, it would be roughly a little more than a year less. So it's a serious enhancement for him. And my argument to you is essentially the amalgamation, the trifecta, if you will, of all of the factors that went into the court's consideration that don't really nail it down to one. And based on this and based on the record, I think that the court should reverse the finding based on these circumstances. Thank you very much. All right, thank you. And do I understand that you took this case by appointment? Yes, Your Honor. We appreciate your efforts very much for the court and for your client. Thanks as well to the government. We'll take the case under advisement.